## 34323. STOVER v. THE STATE.

Decided November 18, 1952.

*D. L. Lomenick Jr.*, for plaintiff in error.
*John W. Davis, Solicitor-General, Frank M. Gleason*, contra.

CARLISLE, J. William Stover was convicted under an indictment charging that he did "break and enter the storehouse and place of business of Ed Yates, Arthur Yates, and Pierce Yates [The Yates Bleachery in Flintstone, Georgia], the same being a place of business where valuable goods, wares, produce, and other articles of value were contained and stored, with intent to commit larceny therein." The defendant's motion for a new trial, based solely on the general grounds, was overruled and he excepted.

In his brief, filed in this court on the appeal, counsel for the defendant contends that all the evidence was entirely circum-

stantial and totally insufficient to establish the corpus delicti or to establish beyond a reasonable doubt the defendant's participation in, or connection with, the alleged crime.

According to the State's theory, the burglary was committed at about two o'clock on the morning of August 3, 1951; there were four participants, including the defendant Stover, a negro man named Bray, and two white men named Yokely and Adams; Adams and Bray entered the bleachery while the defendant and Yokely remained nearby in the defendant's automobile, a maroon DeSoto convertible, as lookouts; and their entry into the bleachery was effected through the basement of the sanforizing room, up an unfinished flight of stairs, on which only the risers were in place, and into the sanforizing room by removing boards which covered the well of the unfinished stairs.

From the evidence adduced on the trial it appears that at about *one o'clock* on the morning of August 3, 1951, Richard V. Camp Jr., a witness for the State, saw the defendant in a maroon convertible in Chattanooga Valley, Walker County, Georgia, and the negro Bray and the two white men, Yokely and Adams, were with him. At about two o'clock on the same morning, the night watchman at the Yates Bleachery saw a negro man and a white man walking along in stooped positions in the softener room of the bleachery. The softener room adjoins the sanforizing room. The night watchman left the bleachery quietly and ran a short distance to the home of Ed Yates. As he approached the Yates house, he saw an automobile drive away from the rear of the Yates house and saw someone in the automobile fire a pistol and heard three shots. The other two Yates brothers were summoned, and they together with another of their employees went to the bleachery where they found the door to the basement open, and saw footprints leading from outside that door up the unfinished stairway. The boards which covered the stair well had been moved sufficiently to permit entrance into the sanforizing room. All the other doors and windows were "safe and sound." No one was present in the bleachery and nothing had been removed therefrom so far as they could ascertain, although considerable quantities of valuable cloth were stored there and the weekly payroll of sev-

eral thousand dollars was in the office safe. As Arthur and Pierce Yates had responded to Ed Yates' alarm and were driving from their homes to the bleachery, they had passed Bray, hiding behind an oak tree near the road, and a short distance farther had seen Adams walking along the road. They stopped both Bray and Adams, and observed that the trouser legs of both were wet up to the knee. Being unable to find the burglars, the Yates brothers returned to their homes, but about four thirty they were again called by an employee who lived near the bleachery, who had seen an automobile driving slowly along the road in the vicinity of the bleachery. As the Yates brothers approached they saw the automobile speed away. They pursued and overtook the automobile and found the defendant and Bray, Adams, and Yokely therein. They also found a forty-five caliber pistol and a sawed-off shotgun in the automobile. The following day an employee of the bleachery found three bullet hulls in the vicinity of the spot where the nightwatchman had seen a pistol fired from an automobile. A firearms identification expert identified those bullet hulls as having been fired from the pistol found in the defendant's automobile. There was evidence that the pistol admittedly belonged to the defendant. On the following morning also, bloodhounds were set upon the tracks at the door to the basement of the sanforizing room, and a dog trailed the tracks to the tree on the road, behind which the Yates brothers had seen Bray hiding when they were on their way to the bleachery following the first alarm. There was evidence that the stairway from the basement to the sanforizing room was not in use as a passageway, and evidence from an employee who worked in the sanforizing room that, when he left the sanforizing room at about five thirty on the evening prior to the alleged burglary, the boards covering the stair well had all been in place, closing the well entirely.

From the evidence which we have set out briefly above, the jury was authorized to find that the four men named were engaged in a conspiracy to burglarize the bleachery; that Bray and Adams entered the bleachery by way of the unfinished stairs from the basement to the sanforizing room; that they effected their entrance by removing the boards; that the de-

fendant and Yokely remained outside, aiding and abetting Bray and Adams by acting as lookouts; and, in view of the time of their entry into the bleachery and the attendant circumstances, the jury was authorized to find that the intent with which the entry was made into the bleachery was to commit a larceny. See, in this connection, *Marshall* v. *State,* 94 *Ga.* 589 (20 S. E. 432); *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36). The evidence authorized the verdict finding the defendant guilty as charged, and the trial court did not err in overruling the motion for a new trial, based solely on the general grounds.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*